UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| NASRIEN HAMADE,<br>on behalf of herself and<br>all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>JP MORGAN CHASE BANK, N.A.,<br><br>Defendant. | Case No.    2:24-cv-11283 |

### CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff Nasrien Hamade ("Mrs. Hamade" or "Plaintiff"), on behalf of herself and others similarly situated, alleging the following facts in support of this Class Action Complaint against JPMorgan Chase Bank, N.A. ("Chase" or "Defendant").

### PRELIMINARY STATEMENT

1. This is a class action complaint prosecuted for the Defendant's violation of the Federal Equal Credit Opportunity Act (ECOA), 15 U.S.C. §1691 *et seq*.

2. Chase regularly accepts and processes consumer credit applications, extends credit, services existing credit accounts, participates in credit decisions and takes adverse actions against consumers.

3. Despite this role, Chase did not provide Mrs. Hamade with an ECOA-compliant adverse action notice when it unilaterally terminated her Chase credit account.

4. Upon information and belief, Chase purposely avoids providing consumers with notices of adverse actions that provide the principal reason for terminating an account.

5. Failure to provide the principal and truthful reason for terminating an account violates the ECOA.

6. Specifically, and by example only, when Chase unilaterally changes the terms of credit granted to an applicant by canceling the account, which is an adverse action against an applicant, and supplies the reason, "because of unexpected activity on these or another Chase account," it does not supply the actual ECOA-compliant reason for the cancelation in or change in terms of credit.

7. Therefore, Chase's adverse action notice does not disclose the principal, accurate or specific reasons for taking adverse actions as required under the ECOA.

8. In addition to supplying a pretextual, false, inadequate, or secondary reason instead of the true or principal reason for taking adverse action, the Defendant's adverse action notices fail to supply other mandatory disclosures required by the ECOA.

9. Mrs. Hamade is an applicant and consumer with excellent credit, who was compliant with the terms of her Chase accounts, has had a positive credit history with Chase, and had a low credit utilization rate.

10. This action is brought for equitable and declaratory relief together with costs and attorneys' fees pursuant to the Equal Credit Opportunity Act (ECOA) 15 U.S.C. §1691 et. seq., and in particular § 1691(d) and its implementing regulations 12 C.F.R. 1002.9 (Regulation B) and § 1691(a)(1).

## JURISDICTION

11. The Court has federal question jurisdiction conferred by 28 U.S.C. § 1331 and 15 U.S.C. §1691e.

12. The Court also has supplemental jurisdiction under 15 U.S.C. § 1367.

13. Venue is proper because Defendant has physical presence in the District and regularly does business in Michigan, including with Plaintiff, who resides in Michigan.

## PARTIES

14. Mrs. Hamade is a natural person who was an "applicant," "consumer," and "person" protected by the Equal Credit Opportunity Act.

15. Mrs. Hamade lives in the city of Dearborn, Wayne County, Michigan.

16. Chase is a foreign corporation engaged in the business of issuing credit cards, with a principal place of business located at 1111 Polaris Parkway, Columbus,

OH 43240.

17. Chase can be served through its registered agent, CT Corporation System, located at 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

18. Chase is a "creditor" as defined by the ECOA.

19. Mrs. Hamade and each putative class member are "applicants" under the ECOA as defined by the implementing Regulation B, which defines an applicant as "any person who requests or who has received an extension of credit from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit. The term 'applicant' also includes guarantors, sureties, endorsers, and similar parties." 12 C.F.R 1002.2(e).

## FACTS

20. In or around January 2023, Mrs. Hamade began to bank with Defendant Chase.

21. Mrs. Hamade had one Chase credit card account, that was in good standing, up to date, paid on time, and active in August of 2023.

22. In or around August of 2023, Chase sent Mrs. Hamade a notice (the "August Notice"), stating that it was closing her Chase credit card account ending in 8422 (the "Account") "because of unexpected activity on this or another Chase account."

23. The Notice indicated that Chase would close Mrs. Hamade's Account

on September 13, 2023.

24. In or around August 2023, Mrs. Hamade opened the August Notice from Chase and learned about the forthcoming closure regarding her Chase credit card account.

25. Mrs. Hamade contacted the Defendant and spoke to a representative of Chase.

26. Mrs. Hamade inquired as to the reason Chase was closing her account and asked for the reason for closure as the letter only indicated unexpected activity.

27. The Chase representative explained that the "unexpected activity" was the reason for closure and that there were not any details beyond that to give.

28. During the call, Mrs. Hamade again requested that she be provided the reason for closure and inquired as to the "unexpected activity."

29. In response, the Chase representative indicated there were no details to provide, there were no options to discuss anything further, that Chase made a final decision and that there was nothing further to give specifics on because there are no specifics to provide.

30. Mrs. Hamade was confused, and emotionally distraught because she had no idea why Chase was closing her credit card account.

31. Mrs. Hamade was left to conclude that the reason for closing the account was a discriminatory reason since she did not have unexpected activity on

the account.

32. Moreover, in the same month as the August Notice, Mrs. Hamade received another notice from Chase informing her that her checking and savings accounts were being closed due to "unexpected activity."

33. Mrs. Hamade had never been late on any of her payments.

34. Mrs. Hamade had never had any "unexpected activity," fraudulent activity or any other type of issues with her credit card accounts since they were opened with Defendant.

35. Mrs. Hamade had never had any issues with Chase and was an exceptional customer.

36. Further, the closure of the credit accounts would significantly impact Mrs. Hamade's credit score and/or credit worthiness because it would cause a reduction in her available credit.

37. During the call, Mrs. Hamade expressly requested that Chase reconsider extending her credit.

38. The representative indicated that Chase would not reconsider because a final decision was made.

39. As a result, Mrs. Hamade's reconsideration for extension of credit with Defendant was denied.

40. Although the Card Agreement may have provided Chase the right to

terminate the card agreements, Chase was still required by the ECOA to provide Mrs. Hamade with a specific reason(s) for the termination in writing.

41. Upon information and belief, based on the reason provided of "unexpected activity" and the fact Mrs. Hamade was compliant with the terms of her credit card account, had excellent credit, and low credit utilization rate overall, Chase's reasons were not only untruthful, but its actions constitute unlawful credit discrimination under the ECOA.

42. When Mrs. Hamade called Chase to request reinstatement of her terminated accounts, Chase refused to reconsider the adverse action or explain the "unexpected activity" that Mrs. Hamade engaged in.

43. A creditor may elect to provide a consumer with a statement of reasons in the adverse action notice itself, or it may provide the consumer with a disclosure both of her right to receive a written statement of reasons and the identity of the person from whom the written statement of reasons may be obtained. Chase's adverse action notice did not provide either method of communicating the statement of reasons for taking adverse action against the Plaintiffs.

44. Chase knew or should have known the adverse action notice it sent to Mrs. Hamade was not only non-compliant with the ECOA, but that it was false.

45. Upon information and belief, Chase knew that Mrs. Hamade was entitled to adverse action notices because, although illegal due to its pretext for

termination, Chase did provide Mrs. Hamade with an ECOA notice, complete with ECOA warnings. Once Chase sent an ECOA notice to Mrs. Hamade, it was obligated to send a notice that was compliant with the ECOA.

46. Upon information and belief, Chase intentionally chose this particular vague and non-specific language to cover up for the true reasons that it terminated Mrs. Hamade's credit.

47. Chase is a large credit granting agency that extends credit to thousands of consumers each year, and knew or should have known about the requirements of Regulation B. Therefore, there is no justifiable reason or good faith basis for its failure to comply with the minimum adverse action requirements of Regulation B.

48. Chase's conduct in sending the adverse action notice to Plaintiff and the class and closing their accounts was not a mistake. Rather, it was exactly as Chase intended.

49. The ECOA adverse action notice requirement was enacted as "a strong and necessary adjunct to the anti-discrimination purpose" of the statute and to "fulfill[] a broader need: rejected credit applicants will now be able to learn where and how their credit status is deficient and this information should have a pervasive and valuable educational benefit." S. REP. No. 94-589, at 406, 408, 1976 WL 13838, at *4, *7 (Jan. 21, 1976).

50. Upon signing of the amendment expanding the ECOA into law,

President Gerald Ford issued a statement on March 23, 1976, in which he confirmed that in addition to its anti-discrimination purpose, the law "permits the Attorney General, as well as private citizens, to initiate suits where discrimination in credit transactions has occurred. It also provides that a person to whom credit is denied is entitled to know of the reasons for the denial." Presidential Statement on Signing the Equal Credit Opportunity Act Amendments of 1976, available at http://www.presidency.ucsb.edu/ws/?pid=5745 (last visited February 21, 2017). These "twin goals" of the 1976 amendment to the Act have been repeatedly recognized by the courts as the basis for the statutory requirement.

51. Chase's failure to provide an ECOA-compliant adverse action notice, which contains the principal reason for denial of credit, deprived Mrs. Hamade of the right to information mandated by Congress to further the anti-discrimination and educational purposes of the statute.

52. Chase's conduct against Mrs. Hamade is the very type of conduct that caused the ECOA to be enacted by Congress in order to protect consumers.

53. The injuries that Mrs. Hamade and the class suffered as a result of Chase's violations are the very types of injuries that the ECOA was enacted to address.

54. Because the Accounts were closed when there were balances and activity, the closure by a credit grantor is a negative credit reporting event because

it has a negative effect on credit utilization ratio and credit mix.

55. These negative events lowered Mrs. Hamade's credit score. https://www.equifax.com/personal/education/credit/report/inactive-credit-card-account-closed/

56. Chase's malfeasance caused a cognizable informational injury to Mrs. Hamade who is left baffled by the decision to close her credit card Account despite the fact that her Account was in good standing.

57. Mrs. Hamade was injured because she was deprived of the information she was entitled to under the ECOA, which would provide her knowledge of conduct within her control that caused Chase's decision to close the Account.

58. Mrs. Hamade was injured because she was deprived of information that would have informed her whether she is the victim of credit discrimination and, based on the reason provided and her credit information, she was a victim of credit discrimination.

59. Mrs. Hamade was injured because she did not receive the benefit of the favorable credit terms of the Account, which Plaintiff used to her financial benefit.

60. Mrs. Hamade was injured because she suffered damages to her credit standing when Chase closed the Account.

61. Mrs. Hamade was injured because she suffered physical injury as a result of emotional distress, intense anxiety, stress, sleep deprivation,

embarrassment, lost time, and inconvenience.

62. Mrs. Hamade was injured because she suffered economic injuries resulting from the closures without knowing the true reason so that she could act upon the information.

63. The putative class members suffered the same or similar informational, financial, and emotional injuries that Mrs. Hamade suffered, injuries the ECOA was designed to protect against.

64. Chase failed to provide an adequate statement of reasons for its adverse action to the class members as required under the ECOA.

65. Upon information and belief, Chase unlawfully discriminated against Plaintiff and the putative class based on their race, religion, and/or national origin.

66. This action is alleged as a class action pursuant to Fed. R. Civ. P. 23(b)(3) and 15 U.S.C. § 1691e (a) on behalf of the following class of Arizonans ("ECOA Adverse Action Class") who suffered violations of 15 U.S.C. § 1691(d) initially defined as:

(a.) All natural persons, (b.) residing in the geographic boundaries of Michigan; (c.) to whom JPMorgan Chase Bank N.A. did provide a notice; (d.) similar to the notice attached as Ex. 1 to the Class Complaint (e.) within five years prior to the date on which this Class Action Complaint was filed.

And a class of Michiganders ("ECOA Discrimination Class") who suffered violations of 15 U.S.C. § 1691(a)(1) initially defined as:

(b.) All natural persons, (b.) who are members of a protected class; (c.) residing in the geographic boundaries of Michigan; (c.) to whom JPMorgan Chase Bank N.A. did provide a notice; (d.) similar to the notice attached as Ex. 1 to the Class Complaint (e.) within five years prior to the date on which this Class Action Complaint was filed.

67. **Numerosity:** Upon information and belief, Plaintiff alleges the class of persons to be represented is so numerous that joinder of all members is impractical. Defendant's website states:

> JPMorgan Chase & Co. (NYSE: JPM), a financial holding company incorporated under Delaware law in 1968, is a leading financial services firm based in the United States of America ("U.S."), with operations worldwide. JPMorgan Chase had $3.7 trillion in assets and $286.4 billion in stockholders' equity as of June 30, 2021. The Firm is a leader in investment banking, financial services for consumers and small businesses, commercial banking, financial transaction processing and asset management. Under the J.P. Morgan and Chase brands, the Firm serves millions of customers in the U.S., and many of the world's most prominent corporate, institutional and government clients globally. JPMorgan Chase's principal bank subsidiary is JPMorgan Chase Bank, National Association ("JPMorgan Chase Bank, N.A."), a national banking association with U.S. branches in 43 states and Washington, D.C. as of June 30, 2021. Found at <u>CORP Q2 2021 (jpmorganchase.com)</u> last visited October 6, 2021. According to Chase's website, it serves "nearly half of America's households with a broad range of financial services, including personal banking, credit cards, mortgages, auto financing, investment advice, small business loans and payment processing" and has more than 4,700 branches. Found at <u>About Chase Bank</u> last visited October 6, 2021.

68. **Typicality:** The letter mailed to Mrs. Hamade is an obvious form letter. Mrs. Hamade and each member of the class are entitled to information about the principal reason that an adverse credit decision was made by Chase. Mrs. Hamade's

claim is not only typical of the class, but it is likely identical to the claims of each class member for the Chase's failure to comply with the ECOA because it likely sent identical adverse action letters, none of which stated the specific or truthful reasons for taking adverse action required by the ECOA and/or Regulation B.

69. **Commonality:** There are questions of law and fact common to the class, and Plaintiff's claim are typical of the claims of all the potential class members. All are based on the same legal and remedial theories and the same reason stated in the denial letters. All are based on the simple class questions of whether Chase failed to provide a specific and truthful statement of reasons for taking adverse action on loan applications in its adverse action notices and whether such failure violated the ECOA including, but not limited to,

   a. Whether Chase supplied a pretextual reason for an adverse action;
   b. Whether Chase supplied the reason "unexpected activity" to cover for a discriminatory or other reason;
   c. Whether Chase supplied the "unexpected activity" reason to Plaintiff in error.

70. **Adequacy:** Plaintiff will fairly and adequately protect the interest of the class. Plaintiff has retained counsel who is experienced in handling class actions and litigation under the Federal Consumer Credit Protection Act, including the Equal Credit Opportunity Act. She is committed to the class and has no conflict with it. Plaintiff has chosen to forego her individual damages in favor of seeking statutory

and punitive damages for the class.

71.    **Superiority:** A class action is superior to other available methods for the fair and efficient adjudication of the controversy as to the ECOA class. There are no individual issues that would burden or impede litigation in the aggregate. Class resolution will provide a uniform decision on the legality of Chase's standard process. Further, absent class representation, it is certain that most class members will be unaware of their rights or be able to obtain adequate legal representation to prosecute those rights.

72.    **Predominance:** Chase has acted or refused to act on grounds that apply generally to the ECOA class such that uniform relief is appropriate. The class claim and the relief sought in this class action predominate over any potentially individual claim a class member may have.

73.    Chase has made a conscious or reckless decision to disregard the ECOA's requirement to provide a specific statement of reasons for taking adverse action on consumer credit applications despite the plain language of the statute and the regulations promulgated by the Consumer Financial Protection Bureau. It has acted on grounds that apply to the class, so that final injunctive relief and declaratory relief will benefit the entire class.

74.    Chase has more than adequate resources to comply with the ECOA's adverse action requirements. It has violated the ECOA in a uniform way affecting

thousands of consumers despite its knowledge of the adverse action notice requirements.

75. Despite the clear instructions set forth in the ECOA and Regulation B, Defendant has refused to and failed to comply with the adverse action notice requirements persistently for the entire period of five years preceding the filing of this complaint.

## COUNT I – Equal Credit Opportunity Act
## 15 U.S.C. §1691(d)
## Class Claim

76. Plaintiff incorporates the above-alleged actions and omissions of Defendant with respect to the adverse action letter that failed to provide an adequate, truthful, primary, or specific statement of reasons for taking adverse action, which violated the ECOA, 15 U.S.C. §1691(d). Defendant's conduct is uniform as to the putative ECOA class.

77. Plaintiff and the putative ECOA class are entitled to a declaration that Defendant's adverse action notices violate the ECOA.

78. Plaintiff and the putative class suffered concrete informational injuries which the ECOA was designed to address, caused by Defendant's conduct in purposely supplying a false reason and refusing to disclose the principal reason for the cancelation of credit.

79. Plaintiff and the putative ECOA class are entitled to equitable relief in

the form of an injunction requiring Defendant to send ECOA-compliant notices to all members of the putative class, together with the other mandatory disclosures required by the ECOA.

80. Under the ECOA, Plaintiff and the class are entitled to equitable and declaratory relief necessary to enforce the purpose of the statute, attorneys' fees, and costs to be determined by the Court. 15 U.S.C. § 1691e.

81. Under the ECOA, Plaintiff and the class are entitled to statutory punitive damages up to $10,000 for each violation.

### COUNT II – Equal Credit Opportunity Act
### 15 U.S.C. §1691(a)(1)
### Class Claim

82. Plaintiff incorporates the above-alleged actions and omissions of Defendant with respect to the adverse action letter that unlawfully discriminated against Plaintiff on the basis of race, religion, and/or national origin, which violated the ECOA, 15 U.S.C. §1691(a)(1). Defendant's conduct is uniform as to the putative ECOA class.

83. Defendant knew Plaintiff was a member of a protected class.

84. Upon information and belief, based on the reason provided of "unexpected activity on these or another Chase account" and the fact Plaintiff was compliant with the terms of her credit card account, had excellent credit, and low credit utilization rate overall, Chase closed Plaintiff's accounts because of her race,

religion, and/or national origin, which is unlawful credit discrimination under the ECOA, 15 U.S.C. §1691(a)(1).

85. Upon information and belief, the putative ECOA class have suffered similar discrimination to Plaintiff.

86. Upon information and belief, the putative ECOA class are entitled to a declaration that Defendant's mass account closures violate the ECOA.

87. Plaintiff and the putative class suffered concrete injuries which the ECOA was designed to address, caused by Defendant's conduct in discriminating against them by closing their credit accounts, an adverse action, solely based on race, religion, and/or national origin.

88. Defendant's conduct entitles Plaintiff and other similarly situated members of the ECOA class to actual statutory punitive damages of up to $10,000 per violation, plus attorneys' fees and costs pursuant to 15 U.S.C §1691e(d).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff Nasrien Hamade respectfully requests judgment be entered against Defendant for the following:

A. Equitable and declaratory relief against Defendant pursuant to the ECOA;

B. Statutory punitive damages of up to $10,000 per violation pursuant to ECOA, 15 U.S.C §1691e(b);

C. Attorneys' fees and costs pursuant to ECOA, 15 U.S.C §1691e(d);

D. Actual damages pursuant to the ECOA, 15 U.S.C. § 1691e(a);

E. Any pre-judgment and post-judgment interest at the legal rate, and

F. Any such other relief the Court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED**.

        **Nasrien Hamade, on behalf of herself and all similarly situated individuals,**

        */s/ Youssef H. Hammoud*
        Youssef H. Hammoud, P85894
        HAMMOUD LAW, P.C.
        3744 E. Chapman Ave., #F12269
        Orange, CA 92859
        Tel: (949) 301-9692
        Fax: (949) 301-9693
        E-mail: yh@lawhammoud.com

        Susan M. Rotkis, AZ #032866
        CONSUMER ATTORNEYS PLLC
        2290 East Speedway Blvd.
        Tucson, AZ 85719
        Tel: (602) 807-1504
        Fax: (718) 715-1750
        E-mail: srotkis@consumerattorneys.com